Michael Hoffman, California Bar No. 154481
mhoffman@employment-lawyers.com
Alec Segarich, California Bar No. 260189
asegarich@sfemployment-lawyers.com
HOFFMAN EMPLOYMENT LAWYERS, LLP
100 Pine Street, Suite 1550
San Francisco, CA 94111
Telephone:   (415) 362-1111
Facsimile:   (415) 362-1112

Attorneys for Plaintiffs
EARL GODHIGH, LISA GLASS, DANIEL
OLIVARES, SR., CYNTHIA OROZCO,
and ALAN BOHN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL GODHIGH, an individual, LISA GLASS, an individual, DANIEL OLIVARES, SR., an individual, CYNTHIA OROZCO, an individual, ALAN BOHN, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SEARS HOME IMPROVEMENT PRODUCTS, INC.; a corporation,<br><br>Defendant. | Case No. C 09-765 SI<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEY FEE AWARD**<br><br><br>Date:   June 18, 2010<br>Time:   9:00 a.m.<br>Ctrm.:   10<br>Judge:   Hon. Susan Illston |

**TO EACH PARTY AND TO THE COUNSEL OF RECORD FOR EACH PARTY:**

YOU ARE HEREBY NOTIFIED THAT on June 18, 2010 at 9:00 a.m. in Department 10 of this Court located at 450 Golden Gate Avenue, San Francisco California, 94102, Plaintiffs Earl Godhigh, Lisa Glass, Daniel Olivares, Sr., Cynthia Orozco, and Alan Bohn individually, and on behalf of all others similarly situated, will ask the Court to issue an order finally approving the class action settlement in this matter and approving Class Counsel's request for attorney fees and costs.

This motion will be based upon this notice, the attached memorandum of points and authorities, the attached exhibits, and the records and files in this action.

Respectfully Submitted,

DATED: May 17, 2010          HOFFMAN EMPLOYMENT LAWYERS LLP

/S/

_____

Michael Hoffman

Attorney for Plaintiffs Earl Godhigh et al.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs EARL GODHIGH et al. ("Named Plaintiffs") and Defendant SEARS HOME IMPROVEMENT PRODUCTS, INC. ("SHIP" or "Defendant"), collectively, "The Parties," reached an agreement that is beneficial to the class as a whole, and to themselves. Ex. A.1 [Joint Stipulation of Settlement ("Settlement Agreement")].[1] On February 9, 2010, the Court entered an order preliminarily approving the settlement of this class action wage and hour case. For the Court's convenience, a copy of that order is attached as Ex. A.2 [Order Approving Class Settlement ("Settlement Order")].

The settlement sprang from significant investigation and negotiations, and is fair, reasonable, and adequate to all persons involved. Further, the class has received full notice, and there has been no opposition to the proposed settlement based on this notice. For these reasons, the settlement meets the standards for final settlement approval and this Court should finally approve the proposed class settlement.

## A. FACTUAL AND PROCEDURAL BACKGROUND

This action was filed as a putative class action on January 21, 2009 in the Alameda County Superior Court by Mr. Godhigh individually and on behalf of all similarly situated employees of SHIP, specifically, all "In Store Marketers" and "In Store Marketer-Supervisors" employed from January 2005 to the time of filing. Ex. A.1 [Settlement Agreement] ¶ I.A. In the original complaint, Plaintiffs sought to represent a subclass of salaried, exempt In-Store Supervisors and a subclass of hourly, non-exempt In-Store Marketers who worked for SHIP in the State of California during the four years preceding the filing of the lawsuit. *Id.* Plaintiffs sought injunctive relief, damages, costs, attorneys' fees and any further relief deemed appropriate by the Court on the basis of their allegations that SHIP failed to provide accurate wage statements in violation of California Labor Code section 226, failed to timely pay wages due at termination in violation of California Labor Code sections 203, failed to maintain accurate

---

[1] Ex. A is the Declaration of Michael Hoffman ("Hoffman Decl."). All subsequent exhibits labeled as "Ex. A.x" refer to evidence cited in the Hoffman Decl.

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

time records in violation of California Labor Code section 1174(d), violated California Labor Code section 2802 regarding the reimbursement of business expenses, failed to pay proper compensation for all hours worked, wrongful termination, conversion, common count, illegal deductions from wages, misclassification of employees as "exempt," violation of California's seven-day workweek law, and unfair competition in violation of California Business & Professions Code section 17200. *Id*. SHIP denied each of the allegations asserted in the litigation and asserted that it has no liability for the claims of the Named Plaintiffs or the Class. SHIP removed the case to this Court on February 20, 2009. *Id*.

After several amendments to the pleadings, the Parties engaged in extensive discovery, including thousands of pages of document production, numerous depositions of Class Members and other witnesses, and propounding and responding to numerous requests for admission and interrogatories. *See* Ex. A [Hoffman Decl.] ¶¶ 4-9.

As a result of this discovery, and ongoing conversations between Class Counsel and SHIP's attorneys, the Parties participated in a private mediation concerning the matter on September 25, 2009. Ex. A [Hoffman Decl.] ¶¶ 6. After several days of negotiations after the mediation, they reached a settlement agreement. *Id.* at ¶ 6-7. The terms of the settlement agreement were memorialized in a Memorandum of Understanding which was executed at the mediation. Thereafter, the Parties negotiated a Joint Stipulation of Settlement which fully set forth the terms of the settlement of the above-captioned action and was executed by the Parties and their counsel. Ex. A.1 [Settlement Agreement].

**B. SETTLEMENT RESULTS**

The parties' Settlement relates to those fifty individuals who comprise the In-Store Supervisor subclass (i.e., those individuals who worked as SHIP In-Store Supervisors in California at any time between January 21, 2005 and the present). The primary terms of the Settlement include:

///

///

///

### 1. Cash Compensation

SHIP has agreed to pay a maximum recovery amount of $350,000 (the "Gross Settlement Amount") to resolve this matter in its entirety. Ex. A [Hoffman Decl.] ¶ 2.b. Out of the Gross Settlement Amount will be deducted individual payments to the settlement class ($25,000, to be distributed equally among the five named Class Representatives), a payment for Plaintiffs' counsel's attorneys' fees and costs (totaling $105,000), settlement administration costs (totalling $7,500), and an additional payment of $2,500 for penalties under the California Private Attorneys' General Act of 2004 (75% of which is to be issued to the California Labor and Workforce Development Agency and 25% of which is to be equally apportioned among the Settlement Class Members). *Id.*, Ex. B [Declaration of Krista Tittle ("Tittle Decl.")] ¶ 15. The amount remaining to be distributed to the Class after the foregoing amounts are paid is estimated to be $210,000 (the "Net Settlement Amount"). Ex. A [Hoffman Decl.] ¶ 2.b.

The Net Settlement Amount will be distributed to the Class as follows: Class Members who did not properly and timely opt out of this action are known as "Settlement Class Members." Ex. A [Hoffman Decl.] ¶ 2.d. Those Settlement Class Members who timely submitted valid Proof of Claim Forms are known as "Authorized Claimants." *Id.* Authorized Claimants are entitled to share in the Net Settlement Amount based on a formula in which the Net Settlement Amount is divided by the total number of workweeks worked by all Authorized Claimants as of the Preliminary Approval Date. The product of this division is then multiplied by the number of workweeks that the individual Authorized Claimant worked during the Class Period. Based on this formula, each Authorized Claimant shall receive a pro rata share of the Net Settlement Amount, with the average amount estimated to be $6,000.00. *Id.* The claimant who worked the most workweeks will receive an estimated $19,800. *Id.*

### 2. Claims Administration and Payment of Claims

Within forty-five (45) days of the date when the Claims Administrator mailed the Notice to the Class, those Class Members who wished to participate in the Class and the Settlement were required to return to the Claims Administrator a completed Proof of Claim Form, executed under penalty of perjury. Those Class Members who did not opt out and who timely returned a

valid Proof of Claim Form (i.e., Authorized Claimants) will be entitled to receive a settlement payment according to the formula discussed above. Ex. A [Hoffman Decl.] ¶ 3.

### 3. Other Settlement Parameters

Pursuant to the terms of the Settlement Agreement, all causes of action against SHIP alleged in the Complaint are resolved. In addition, after all issues of approving the settlement and distributing the settlement funds are resolved, the Parties will enter a final judgment.[2] Further, the Parties agree that the Court will retain jurisdiction over the matter while the terms of the agreement, namely, distribution of funds to Class Members, the Claims Administrator, Class Counsel, are sorted out.

## C. NINETY FOUR PERCENT OF THE CLASS WAS NOTIFIED OF THE SETTLEMENT AND SEVENTY PERCENT ARE PARTICIPATING IN IT

Simpluris, Inc. ("Simpluris") was engaged by the parties to provide settlement administration services in the case. Simpluris' duties included: a) printing and mailing of the Notice of Pendency of Class Action, Proposed Settlement and Final Hearing, Proof of Claim Form and Request for Exclusion Form ("Class Notice"); b) receipt of undeliverable Class Notices; c) receipt and validation of Claim Forms and request for exclusion; d) calculation of claim payments and will also include distribution of funds and tax-reporting following final approval; e) mailing of settlement checks; and f) answering questions from class members. Ex. B [Tittle Decl.] ¶ 3.

A toll-free telephone number was included in the Notice for the purpose of allowing the Class Members to call Simpluris and to make inquiries regarding the Settlement. The toll-free telephone number included in the Notice was (888) 369-3780. *Id.* at ¶ 4. On February 22, 2010, Simpluris received from Defense Counsel the Class Notice prepared by Counsel. The Class Notice advised Class Members they could submit a request for exclusion post-marked on or before April 29, 2010, or a Claim Form post-marked on or before May 6, 2010. The Claim Form and Exclusion Form were enclosed with the Class Notice. Ex. B [Tittle Decl.] ¶ 5, Ex. A.

On March 11, 2020, Counsel for SHIP provided Simpluris with a mailing list ("Class

---

[2] A proposed Final Judgment is attached as Ex. C.

-5-
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

List") containing Class Member name, last known address, social security numbers and weeks worked during the class period. The Class List contained data for 50 Class Members. Ex. B [Tittle Decl.] at ¶ 6. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Notice Packets. *Id*. at ¶ 7.

On March 15, 2010, Notice Packets were mailed to 50 identified Class Members contained in the Class List via First Class mail. As of this date, 7 Notice Packets were returned by the post office. For those without forwarding addresses, Simpluris performed a skip trace on all of these addresses by using Accurint. Simpluris utilized the Class Member's name and previous address for locating a current address. Twelve (12) Notice Packets were re-mailed to either a newfound address, with forwarding addresses provided by the United States Postal Service or at the request of the Class Member. Ultimately, after additional searches, only 3 Notice Packets were undeliverable because Simpluris was unable to find a better address. *Id.* at ¶¶ 8-9. Finally, Class Counsel sent out its own mailing to class members in an attempt to deliver notice to as many class members as possible. Ex. A [Hoffman Decl.] ¶ 3, Ex. 3.

Simpluris is responsible for receipt of all Claim Forms. As of this date, Simpluris has received a total of 35 completed Claim Forms. The 35 valid claims received from the participating members of the class represent 70% of the entire Settlement Class, whose work weeks represent 82.25% of the total weeks worked by the entire Settlement Class. Ex. B [Tittle Decl.] ¶ 10.

### III. ARGUMENT

### A. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

There is a strong judicial policy favoring settlements, particularly in complex class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The "universal standard" in evaluating the fairness of a settlement is whether the settlement is "fundamentally

-6-
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

fair, adequate, and reasonable." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) sets out a variety of standards for approval of a class settlement to ensure the proposed settlement is fair, adequate, and reasonable, and in the best interests of the class. Additionally, the district court should satisfy itself that the settlement is not the product of collusion between the parties. *Class Plaintiffs*, 955 F.2d at 1290. In this case, as set forth prior to preliminary approval, all of the *Hanlon* factors warranting approval of a class settlement are present, except for the lack of a government participant. Nothing has taken place since preliminary approval was granted to justify denial of final approval.

### 1.   Strength Of The Plaintiffs' Case

Although the Class Representatives believe strongly in the merits of their case, they concede the case involves unsettled questions of law. Plaintiffs contend that SHIP fails the "fifty-percent" test required to receive an executive exemption under the California Labor Code and related Wage Orders. Likewise, Plaintiffs have gathered substantial evidence that their duties did not include any form of true discretion or independent judgment, and that the In-Store Supervisors were misclassified as exempt from overtime provisions, among other claims. Ex. A [Hoffman Decl.] ¶ 7-8. Finally, Plaintiffs maintain this action is amenable to class treatment as the Class Members were uniformly misclassified, the assertion from which all of their remaining claims flow.

SHIP denies any liability or wrongdoing of any kind associated with the claims alleged in the operative Complaint, and it denies further that, for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment. In summary, SHIP maintains that it 1) did not misclassify Supervisors as exempt, 2) paid Supervisors the proper wages, including overtime, 3) provided all other compensation as required under California law; and (4) properly reimbursed the Supervisors for expenses. Ex. A [Hoffman Decl.] ¶ 9.

///

///

///

### 2. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation

It goes without saying that "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Had this case not settled, class certification, discovery, and trial preparation would have been extremely time consuming and expensive. Ex. A [Hoffman Decl.] ¶ 10-11. Continued litigation would likely entail substantial additional discovery and discovery disputes, the filing of dispositive motions, and a complex trial involving thousands of pages of employee pay, time, and personnel records. Furthermore, whatever the outcome of the trial, it would likely be followed by a prolonged appeal by one or both sides. *See DIRECTV*, 221 F.R.D. at 527 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

### 3. The Risk Of Maintaining Class Action Status Throughout The Trial

The Class Representatives strongly believe their lawsuit is maintainable as a class action. However, there are risks associated with the class certification issue. For example, if the litigation had proceeded to a contested class certification motion, SHIP would have likely argued that class certification should be denied because individual questions predominate as to whether the Class Members were actually exempt, based on the duties performed at individual store locations. Additionally, SHIP likely would argue that any reimbursement claims made by the class members would require a case-by-case determination unsuitable for class treatment. The uncertainty of whether a contested class certification motion would have been granted warrants settlement now.

### 4. The Amount Offered In Settlement

In the experience of Class Counsel, the Gross Settlement Amount of $350,000 falls well within the acceptable and usual range of settlements of wage and hour disputes of this size involving as it does about fifty employees. Similarly, the formula used for determining the "payment per workweek" that each Class Member who submits a timely and valid Proof of Claim Form (i.e., an Authorized Claimant) would be entitled to receive for each workweek

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

during the Class Period is the typical methodology used to compensate class members in settlements of wage and hour disputes. Further, this amount represents a reasonable discount of SHIP's possible exposure in light of the uncertainty of prevailing on class certification or at trial. The terms of the proposed Settlement provide a significant recovery by Class Members while at the same time offering a manageable approach to calculating Settlement Payments. Accordingly, this factor weighs in favor of approval as well.

### 5. The Extent Of Discovery Completed And The Stage Of The Proceedings

In the months leading up to the tentative settlement, the Parties engaged in extensive discovery, including thousands of pages of document production, numerous depositions of Class Members and other witnesses, and propounding and responding to numerous requests for admission and interrogatories. *See* Ex. A [Hoffman Decl.] ¶ 11-12. The Ninth Circuit has repeatedly held that, in class action settlements, extensive formal discovery "is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about the settlement." *In re Mego Financial Corporation Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000). Here, Class Counsel had more than enough information to negotiate a fair settlement. This factor weighs in favor of approval.

### 6. The Experience And View Of Class Counsel

Proposed class counsel – Hoffman Employment Lawyers, LLP – are highly-experienced lawyers who have acted as class counsel in multiple wage and hour class actions in the past.[3] They have conducted an extensive investigation into Defendant's wage and hour practices and have reviewed thousands of pages of pay and personnel records for the Class. Additionally, they are well-versed in the intricacies of California's wage and hour laws, including the laws at issue in this lawsuit. Based on this investigation and experience, Class Counsel believes this settlement to be fair and reasonable in light of the risks of continued litigation and the present benefit to the class. Thus, this factor favors approval.

///

---

[3] Class Counsel's concurrent motion for approval of stipulated attorney fees recites in depth its experience in wage and hour litigation. In the interests of efficiency, those qualifications will not be repeated here.

-9-
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### 7. The Presence Of A Governmental Participant

The only government involvement in this case is that the Plaintiffs notified the California Labor and Workforce Development Agency ("LWDA") of those claims in the suit impacted by the Labor Code Private Attorney General Act, Cal. Lab. Code § 2699 *et seq.* ("PAGA") as required by that statute. The LWDA issued a notice that it would not investigate these claims. Finally, the settlement allocates a portion of the settlement for a payment to the State of California related to Plaintiffs' PAGA claims.

### 8. The Reaction Of The Class To The Settlement

The reaction of the class to the Settlement has been favorable. Out of a class of fifty members, a total of thirty five, or seventy percent, have filed claims for approximately eighty-two percent of the Net Settlement Amount. Ex. B [Tittle Decl.] ¶ 10. No class members opted out of the Settlement, and <u>no class members have filed or joined in an objection to the Settlement.</u> By way of comparison, in *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571 (E.D. Pa. 1978), the district court found that an opt-out rate of about four percent was a factor that <u>supported</u> approving the settlement. Similarly, in *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) the court approved a class action settlement in which nearly sixteen percent of the class opted out, and three of the four named plaintiffs filed objections. *Id*. at 616, 624. Thus, as the instant class has positively responded to the settlement, this factor also favors approval.

### 9. There Was No Collusion Between the Parties

Finally, the Settlement is not the product of collusion. To the contrary, the settlement negotiations were overseen by an independent and highly regarded mediator and were entirely adversarial and at arm's-length. Ex. A [Hoffman Decl.] ¶ 6.

## IV. CONCLUSION

For all the foregoing reasons, the Named Plaintiffs request that the Court: 1) find that the Settlement is fair, reasonable, and in the best interests of the class; 2) grant final approval to the Settlement; and 3) approve Class Counsel's application for attorney fees.

///

|  |  |
|---|---|
|  | Respectfully Submitted, |
| DATED: May  17 , 2010 | HOFFMAN EMPLOYMENT LAWYERS, LLP |
|  | /S/ |
|  | _____ |
|  | Michael Hoffman |
|  | Attorney for Plaintiffs EARL GODHIGH et al. |

**HOFFMAN EMPLOYMENT LAWYERS**
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111